CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL J. STOGSDILL, ) | |
| Plaintiff, ) | Civil Action No. 7:23cv00133 |
| ) | |
| v. ) | |
| ) | |
| STEPHEN CLEAR, *et al.*, ) | By: Robert S. Ballou |
| Defendants. ) | United States District Judge |

## MEMORANDUM OPINION

Plaintiff Michael Stogsdill, formerly a pretrial detainee housed at Southwest Virginia Regional Jail and proceeding *pro se*, filed an action pursuant to 42 U.S.C. § 1983 contending that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

This matter is before the court on dispositive motions filed by certain Defendants. Specifically, Stephen Clear filed a motion to dismiss (ECF No. 19), Cpl. Alvin Minton filed a motion to dismiss (ECF No. 49), Lt. Michael Sabo filed a motion to dismiss (ECF No. 51), Sgt. Brittany Burkett filed a motion to dismiss (ECF No. 53), and Major Larry Kilgore filed a motion to dismiss (ECF No. 55). Defendants Tammy Stevens, LPN, Lori Lynch, LPN, Crystal Large, NP, and Gregory Haynes, MD, filed a motion for summary judgment (ECF No. 61). For the reasons that follow, the court will dismiss Stogdill's claims against all Defendants.

### I. Facts and Procedural History

Stogsdill's claims are premised upon a limited set of allegations made in his initial complaint, which was verified. (Compl. (ECF No. 1).) He claims that prior to January 19, 2023, he repeatedly requested and was denied "mental health medications" by medical staff.

(ECF No. 1-1 at 1.) He also claims he suffered a heart attack on January 19, 2023, which he attributes to anxiety over Defendants' refusal to provide him "mental health medications." (*Id.*) Allegedly, on January 19, 2023, Stogsdill attempted to exercise in his cell to alleviate an anxiety attack, and he passed out. (*Id.* at 1–2.) He asserts he was unconscious on the floor and that his cell mate and other inmates called for help. (*Id.* at 2.) According to Stogsdill, although medical staff responded within one minute, the only medical treatment he received was a blood pressure and respiration check, a glass of water, and a "prescription of blood pressure checks." (*Id.* at 2–3.)

He claims that these blood pressure checks were not performed consistently over the next four days through January 23, 2023. (*Id.* at 3.) Stogsdill further alleges that during morning rounds on January 23, 2023, a nurse discovered that his pulse, heart rate, and respiration were "seriously below normal," and he was taken to the hospital that day. (*Id.*) Upon arrival, he states he suffered a cardiac arrest, "endured lifesaving intervention and subsequently was taken to surgery where a pacemaker was implanted." (*Id.*) After his return to the Jail, Stogsdill claims he continued to experience cardiac complications. (*Id.* at 3–4.) He alleges the nurses "fail[ed] to remedy any request he ma[de] as to medicines to control his indigestion and mental health issues." (*Id.* at 4.) Stogsdill alleges concern over "the means of follow up care to his cardiologist as well as seeing a competent medical provider that will suffice [sic] his serious medical needs." (*Id.*) Stogsdill was released from incarceration on May 26, 2023.[1] (ECF No. 62 at 11.)

---

[1] Stogdill's release moots any concerns about his ongoing needs for care; no Defendant could provide him care after his release.

Stogsdill's complaint failed to identify the specific actions or inactions of each defendant. Rather, Stogsdill made only general assertions against the group of defendants characterized as "security staff" and "medical staff." (*Id.* at 1.) Stogsdill's complaint does not include any request for monetary damages or any other form of relief.[2]  Stogsdill has not requested leave to amend his complaint.  Stogsdill has not asked for discovery.

Stephen Clear, Cpl. Alvin Minton, Lt. Michael Sabo, Sgt. Brittany Burkett, and Major Larry Kilgore all filed motions to dismiss.  (Dkts. 19, 49, 51, 53, and 55, respectively.).  Each filed a memorandum in support of his or her motion. (Dkts. 20, 50, 52, 54, and 56, respectively).  After receiving *Roseboro* notices, Stogsdill filed responses to these motions at ECF No. 26, which contains a discussion of the facts and legal argument, and ECF No. 60, which merely states that he wishes to proceed with his case and that the motions filed by Defendants generally have "no merit."  Defendant Clear replied at ECF No. 40.

Stevens, Lynch, Large, and Haynes filed a motion for summary judgment (ECF No. 61) and a memorandum in support of the motion for summary judgment.  (ECF No. 62.)  Stogsdill filed a response (ECF No. 66), but he did not submit any affidavits or evidence to oppose the summary judgment motion.

On August 28, 2023, the court issued an Order directing Stogsdill to provide sufficient information to permit service upon named Defendant Nurse Dawton after a request for waiver of service sent to him or her was not returned.  (ECF No. 42.)  Stogsdill did not respond or provide any information sufficient to permit service upon Nurse Dawton.  Accordingly, the court will dismiss Nurse Dawton from this action without prejudice pursuant to Fed. R. Civ. P. 4(m).

---

[2] Stogsdill later explained that he did not know he needed to do so and assumed the Defendants would offer compensation or the case would proceed to trial.  (ECF No. 66 at 1.)

## II.   Motions to Dismiss

### A.  Standard of Review

Stogsdill brings this action *pro se,* so the court liberally construes his pleadings.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   However, the court may neither construct a plaintiff's legal arguments for them, *Spanos v. Vick*, 576 F. Supp. 3d 361, 366 (E.D. Va. 2021), nor "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).   When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).   However, dismissal is appropriate when the complaint fails to state a claim upon which relief could be granted.   Fed. R. Civ. P. 12(b)(6).   To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  Analysis

First, as a threshold matter, Stogsdill's claims are not cognizable under the Eighth Amendment.   As a pretrial detainee, Stogsdill's claims related to allegedly inadequate medical treatment arise under the Fourteenth Amendment, not the Eighth Amendment.   *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("Mays alleged that the denial of medical care violated both the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause.   Since Mays was a 'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim.").  Accordingly, Stogsdill is not entitled to relief under the Eighth Amendment.

A pretrial detainee may, however, assert a claim of inadequate medical care pursuant to the Fourteenth Amendment under 42 U.S.C. § 1983. To state a claim for deliberate indifference to a medical need, a pretrial detainee must show that "(1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Historically, a claim for deliberate indifference required showing that the defendant actually knew of and ignored a detainee's serious need for medical care. *Id.* at 607–08. However, the Fourth Circuit in *Short* held "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.': that is . . . that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)) (citation omitted). Differences in opinion between an inmate and medical staff over the course of medical treatment generally are insufficient to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). The Fourth Circuit recently reiterated that it is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now." *Short*, 87 F.4th at 611–12 (citations omitted).

Further, liability under § 1983 is personal, meaning that a plaintiff must identify the specific actions or inactions of each defendant that led to the claimed harm. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Defendants "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Id.*

When there are no specific factual allegations against a defendant, dismissal is warranted. *E.g.*, *Harris v. City of Va. Beach*, 11 F. App'x. 212, 214–17 (4th Cir. 2001) (upholding dismissal of § 1983 claims against five defendants because of lack of allegations of personal involvement); *Lewis-Bey v. Wilson*, No. 3:17CV763, 2019 WL 4889261, at *3 (E.D. Va. Oct. 3, 2019) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints.").

The complaint described Stogsdill's medical situation but it did not contain any information about specific actions or inactions of each Defendant. Stephen Clear was the only named Defendant at the time the complaint was filed; all others were named only as unidentified Jane and John Doe Defendants. Stogsdill then was ordered to name the Defendants (ECF No. 15), and he did so (ECF No. 16). But, he never identified the specific actions or inactions of most Defendants even after this deficiency was repeatedly noted in motions to dismiss. (*E.g.* ECF No. 50 at 7.) Nowhere in any of Stogsdill's submissions did he identify any actions or inactions of Defendants Clear, Minton, or Kilgore. Accordingly, these Defendants must be dismissed.

That Stosgsdill referred collectively to the medical defendants as a group does not suffice. In § 1983 cases, it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the

-6-

state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10). "As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (internal quotation marks omitted). Accordingly, a complaint which "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Id.* (citations omitted). A plaintiff "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *Id.* "Put another way, a plaintiff's allegations must provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them, including what conduct is at issue." *Id.* (internal quotation marks omitted). Therefore, Stogsdill's collective references do not substitute for the requirement that he identify actions or inactions of each individual Defendant.

In Stogsdill's response to Defendant Clear's motion to dismiss, he did describe actions of some of the named Defendants. (*See* ECF No. 26 at 2–4.) Defendant Burkett was said to have been leaning against a sink as Nurse Stevens took his vital signs. (*Id.* at 2.) Nurse Stevens is said to have taken his vital signs and asked Stogsdill what happened after he allegedly passed out. (*Id.*) Stevens is also described as telling Stogsdill he would be seen by the jail's doctor and that his blood pressure would be checked three times a day. (*Id.* at 2–3.) Nurse Lynch was described as taking his vital signs on January 20 and 22, 2023, albeit without telling him the results or writing anything down. (*Id.* at 3.) Lieutenant Sabo is described as coming back to Stogsdill's cell after his vital signs were found to be abnormal with a wheelchair and reporting that he was about to be transported to the hospital. (*Id.* at 4.) In his opposition to the summary

-7-

judgment motion, Stogsdill states that he did not see Dr. Haynes until February 14, 2023, "weeks" after he was taken to the hospital, and that when he saw him, Dr. Haynes "had no knowledge whatsoever" of his trip to the emergency room. (ECF No. 66 at 1–2.) He further explains that "in regards to N.P. Large we never once spoke of my condition." (*Id.* at 2.)

These are the only specific actions or inactions of each Defendant alleged by Stogsdill at any point in this litigation. Even were the complaint to be amended[3] to include these allegations and even assuming the truth of these allegations as the court must do on a motion to dismiss were the complaint to be amended, none of these alleged facts indicate any actions on the part of these Defendants that could constitute deliberate indifference to Stogsdill's serious medical needs in violation of the United States Constitution.

Here, even assuming the facts identified by Stogsdill satisfy prongs 1 and 4 of the *Short v. Hartman* test for deliberate indifference above, no allegations whatsoever have been made by Stogsdill that would support prongs 2 and 3 because Stogsdill alleged no facts as to the actions or inactions of each Defendant or any particular Defendant's awareness of harm. Defendants Sabo and Burkett are correctional officers, not healthcare providers; there are no facts alleged by Stogsdill that would support any inference that they were either subjectively or objectively aware of any likelihood of harm to him. The allegations made by Stogsdill in his briefing (even as to the medical staff) do not indicate any medical shortcoming or knowledge of harm (either objective or subjective). Rather, the allegations relate to the provision of care to Stogsdill, not to the Defendants' failure to provide care, and they do not suggest the care provided was faulty. The only inaction related by Stogsdill is Stevens's alleged failure to tell Stogsdill his blood

---

[3] "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

pressure results or write anything down after she took the readings.  At best, this might be negligent, but this single alleged shortcoming does not meet the standard for establishing a plausible claim of deliberate indifference to a serious medical need and would not have caused Stogsdill's need for a pacemaker.   Similarly, Stogsdill clarified that Haynes and Large had no contemporaneous involvement in the incident giving rise to his claim, so they could not have exhibited deliberate indifference to his medical needs, when there is no claim that they were aware of the needs at the time or ever.   The allegations made by Stogsdill are simply not sufficient to support a viable claim against Defendants Sabo, Burkett, Stevens, Lynch, Haynes, or Large.

### III.     Medical Defendants' Motion for Summary Judgment

Certain of the Defendants who are health care providers (Stevens, Lynch, Large, and Haynes) filed a motion for summary judgment (ECF No. 61), offering the court additional facts and evidence to support an urged conclusion that the medical care provided to Stogsdill was both responsive and appropriate to his needs.   They submitted detailed affidavits (Dkts. 62-1 and 62-2) and medical records.   (ECF No. 62-3.)   This proffered evidence indicates that Stogsdill refused mental health assessment and blood pressure checks.   (ECF No. 62 at 5, 7.)   Defendants explained why Stogsdill was not given the mental health medication he had received prior to his incarceration.   (*Id.* at 14–16.)   Defendants contend that although Stogsdill did have a cardiac condition that required a pacemaker, he did not have a heart attack at any point and that the prison responded appropriately and quickly once he had symptoms and provided appropriate follow-up care.   (*Id.* at 16–18.)   The Defendants' account of events also differs from the timeline asserted by Stogsdill in his complaint. Stogsdill claims he passed out on January 19, 2023, and was hospitalized on January 23, 2023.   (ECF No. 1-1 at 1, 3.)   Defendants claim he

passed out on January 20, 2023, and was hospitalized on January 22, 2023.  (ECF No. 62 at 17.)

As noted above, Stogsdill did not offer the court any evidence in rebuttal or even provide any argument to oppose the summary judgment motion.  His case would rely solely on the allegations he made upon personal knowledge in his verified complaint.  The court need not, however, address the merits of the summary judgment motion because Stogsdill failed to state a claim against these Defendants in the first place.  Because of the court's ruling above finding that dismissal is warranted as to all Defendants for failure to state a claim, the court **DENIES** the motion for summary judgment as moot.

### IV.   Conclusion

Because Stogsdill failed to make any specific allegations against any Defendant that support a plausible claim of entitlement to relief, the complaint fails to state a claim upon which relief could be granted, and dismissal of each Defendant is required.

An appropriate order will be entered this date.

**ENTERED** this 20th day of March 2025.

                        Robert S. Ballou
                        United States District Judge